[Cite as *State v. Woods*, 2014-Ohio-4484.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100784**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## GEORGE WOODS

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-575199-A

**BEFORE:** S. Gallagher, P.J., Keough, J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** October 9, 2014

**ATTORNEY FOR APPELLANT**

Ruth R. Fischbein-Cohen
3552 Severn Road, #613
Cleveland, OH    44118


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Maxwell Martin
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH    44113

SEAN C. GALLAGHER, P.J.:

**{¶1}** Appellant George Woods appeals his conviction for kidnapping and sexual battery, the merger of offenses, and the sentence imposed by the trial court. For the reasons stated herein, we affirm.

**{¶2}** On June 11, 2013, appellant was indicted on two counts of rape and one count of kidnapping, each with one- and three-year firearm specifications. The one-year firearm specifications were later dismissed.

**{¶3}** Appellant entered a plea of not guilty, and the matter proceeded to a jury trial. At trial, testimony and evidence were presented concerning an incident that gave rise to the charges.

**{¶4}** At the time of the alleged offenses, the victim was a 26-year-old female who was a drug user and had prostituted herself for drugs "a couple of times." The victim testified that on July 6, 1993, she had been drinking with her mother all day. After midnight she left her mother's house so she could find drugs in order to get high. She was unsuccessful and returned to her mother's home, but she left without gaining entry. According to the victim's testimony, as she was walking in her mother's neighborhood, she saw an acquaintance, referred to as "Richard," and asked for a ride home. His car was parked near the road at the front of a big field with a house at the back, and it was very dark. The victim testified that as she was getting into the car, two males carrying shotguns approached. She saw the males pump the guns and "do the click-click." She

heard one of them say to "grab the b**** before she run." The victim testified one of the males grabbed Richard, threw him in the back seat, was asking "where's the money," and was beating him. She testified the other male grabbed her, put her in the front seat, and forced her to perform oral sex, stating she better or she "was going to die." The two perpetrators took turns assaulting her. She believed she had no choice and that they were going to kill her if she did not perform. She testified her clothes were taken off, but she could not recall if she was vaginally raped. She remembered that when it was over, she was on the ground, she felt a muzzle to the back of her head, and she was threatened not to move. The victim testified that after the perpetrators left, Richard drove her to his residence to give her clothing and then to her sister's house.

{¶5} On cross-examination, the victim denied that she had been walking out of a drug house with Richard before the incident happened. She also denied that she had sex with the perpetrators to get Richard out of a debt.

{¶6} The victim's sister testified that the victim was crying hysterically, she was dirty, her hair was a mess, and she said she had been raped. The police were called, and the victim was taken to the hospital. There were no named suspects as a result of the initial police investigation.

{¶7} Years later, in 2012, DNA testing was performed on genital swabs and the victim's shorts. The results revealed two DNA profiles; one was consistent with the profile of the victim and the other with appellant. The DNA samples that were tested

were not degraded, and there was essentially no chance that anyone else on earth would match the DNA profile.

{¶8} Det. Christina Cottom, a detective in the sex crimes unit of the Cleveland Police Department, testified that the case had been a cold case for which DNA testing had not been available at the time of the crime. She compiled a photo array that was presented to the victim by a blind administrator. The victim did not identify any of the individuals in the array, which included a photograph of appellant. Det. Cottom interviewed appellant, and a redacted version of the video recording was played to the jury. During the interview, appellant stated Richard owed his cousin, Eric Hill, $80 and that appellant went along with Hill to collect the debt. Appellant stated they approached Richard and the victim as they were coming out of a house, there was an argument, and "[w]e pulled a gun." He indicated that Richard offered the victim up, but "she wasn't with it." He stated they "started doing what we was going wanting to do. Basically that's how it went." Appellant admitted the sex was not consensual. He stated, with reference to Hill, "I gave him the gun that I had on me and I went on and raped her." Appellant stated his gun was a "Tec-9." Appellant also indicated that "[i]t was basically on me if they got shot or not."

{¶9} Appellant testified at trial. He testified that on July 6, 1993, he was assisting Hill in collecting a debt for drugs. Appellant and Hill each had a gun. Appellant testified that Richard and the victim were coming out of a house. Following conversations that occurred, the victim got into the car and pulled her shorts off. Hill

and appellant took turns having vaginal sex with the victim and then left. Appellant stated the sex was payment for the debt. Appellant denied that any oral sex occurred and denied the use of a gun during the incident. Appellant conceded that usually when sex is offered for drugs, the girl gets the drugs. He agreed that Richard owed the money and that the victim did not receive any drugs. He conceded telling the detective that "[Richard] basically offered her but she wasn't with it, you know." He also testified that the victim protested the arrangement by saying "[w]hy she got to, you know, take care of it. She ain't getting nothing out of it." Appellant claimed that the sex was not forced and denied kidnapping the victim. At the time of trial, Hill was deceased.

{¶10} Appellant was found guilty of sexual battery, the lesser-included offense of rape as amended in Count 1 of the indictment, and the jury found appellant did threaten physical harm with a weapon. Appellant was also found guilty of kidnapping while having a firearm on or about his person while committing the offense. A three-year firearm specification was found to apply to each of the offenses.[1]

{¶11} At sentencing, the trial court found that the offenses of sexual battery and kidnapping were allied offenses of similar import subject to merger. The state elected for appellant to be sentenced on the kidnapping count. The trial court imposed a maximum sentence of 10 to 25 years, pursuant to R.C. 2929.11(B)(1) and (2) as it existed in 1993 when the crimes were committed. The court merged the three-year gun specifications and ordered the three years to be served prior to and consecutive with the

---

[1] Appellant was found not guilty of Count 2 for rape with firearm specification.

base charge. The sentence was ordered to be served consecutive to a term of incarceration imposed in Cuyahoga C.P. No. CR-08-514171-A. Appellant was also classified as a sexually oriented offender.

{¶12} Appellant filed this appeal, raising four assignments of error for our review. Under his first assignment of error, appellant claims the trial court erred by merging the kidnapping into the sexual battery conviction. Although it is highly unusual that the defendant would challenge a merger, as opposed to the non-merger of offenses, we nonetheless find no error by the trial court.

{¶13} When a defendant's conduct results in the commission of two or more "allied" offenses of similar import, that conduct can be charged separately, but the defendant can be convicted and sentenced for only one offense. R.C. 2941.25(A). In determining whether offenses merge, we consider the defendant's conduct. *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 44. "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" *Id*. at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 50 (Lanzinger, J., dissenting). If we answer both questions affirmatively, then the offenses are allied offenses of similar import and will be merged. *Johnson* at ¶ 50.

**{¶14}** In *State v. Logan*, 60 Ohio St.2d 126, 397 N.E.2d 1345 (1979), the Supreme Court of Ohio outlined several guidelines for determining whether a kidnapping offense should be allied with a related offense.   The court in *Logan* held:

> In establishing whether kidnapping and another offense of the same or similar kind are committed with a separate animus as to each pursuant to R.C. 2941.25(B), this court adopts the following guidelines:
>
> (a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;
>
> (b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.

*Id*. at syllabus.

**{¶15}** In this case, we find that the offenses of kidnapping and sexual battery could be committed by the same conduct and the record reflects in fact that the offenses against the victim were committed by the same conduct.   Further, the restraint of the victim was merely incidental to the sexual battery and was not committed with a separate animus. The restraint of the victim was not prolonged, secretive, or substantial and did not result in an increased risk of harm to the victim.   As such, the trial court did not err by merging the convictions for kidnapping and sexual battery.   The trial court properly allowed the state to elect which count to elect for sentencing purposes.   Appellant's first assignment of error is overruled.

{¶16} Under appellant's second assignment of error, appellant claims his conviction is not supported by sufficient evidence. A claim of insufficient evidence raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. In reviewing a sufficiency challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶17} Appellant argues that this was nothing other than a trade between a debt and sex, that the victim prostituted herself for drugs "back then," and that the victim got into the car and pulled her shorts down on her own. However, the testimony reflected that this incident did not involve an arrangement between the victim and the offenders. Rather, it was Richard who owed the money and appellant stated that the victim "wasn't with it." According to the victim's testimony, the perpetrators approached with shotguns, she was forced into the front seat by the perpetrators, her clothes were taken off, and she was threatened to perform or she "was going to die." The victim's sister described the victim as crying hysterically and appearing in disarray. Appellant stated during an interview with the detective that he and his cousin pulled a gun, that they started doing what they intended, that he "went on and raped her," that the sex was not consensual, and that it was on him "if they got shot or not." DNA evidence linked appellant to the sexual offense. After viewing the evidence in a light most favorable to

the prosecution, we find any rational trier of fact could have found the elements of the offenses proven beyond a reasonable doubt. Appellant's second assignment of error is overruled.

{¶18} Under his third assignment of error, appellant challenges his conviction as being against the manifest weight of the evidence. When reviewing a claim challenging the manifest weight of the evidence, the court, reviewing the entire record, must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387. Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the exceptional case in which the evidence weighs heavily against the conviction. *Id*. A claim that a jury verdict is against the manifest weight of the evidence involves a separate and distinct test that is much broader than the test for sufficiency. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 193.

{¶19} Appellant challenges the credibility of the victim, noting her use of alcohol and drugs and her prostitution for drugs. He argues that although the victim may have been displeased, she went along with the arrangement to repay Richard's debt. While appellant claims the detective "put words in his mouth" during the interview, our review of the transcript of the interview reflects otherwise. Appellant indicated he and his cousin "pulled a gun," that the sex was not consensual, and that he raped the victim.

This was consistent with the victim's account of events. Upon our review of the entire record, we cannot say the conviction is against the manifest weight of the evidence. Appellant's third assignment of error is overruled.

{¶20} Under his fourth assignment of error, appellant maintains that it was error not to indict and try Richard as an accomplice. Appellant lacks authority to challenge the state's decision to charge Richard as an aider and abettor to the crimes, and we are unable to conclude that any of appellant's constitutional rights were violated. Appellant's fourth assignment of error is overruled.

{¶21} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
EILEEN A. GALLAGHER, J., CONCUR